UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAKEEM A. CHANEY #770493,

    Plaintiff,                                      Hon. Janet T. Neff

v.                                                      Case No. 1:18-cv-1065

UNKNOWN BREEDLOVE, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

The Court has before it Defendants' Motion for Summary Judgment. (ECF No. 20.) Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**. The undersigned further recommends that the Court dismiss Plaintiff's retaliation claim against Defendant Breedlove pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

**Claims at Issue**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued MDOC employees Unknown Sgt. Breedlove, Unknown Corrections Officer (CO) McElfresh, Unknown CO Donahue, and Unknown CO Hudson pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise out of an incident that occurred on July 22, 2017, at the Michigan Reformatory Correctional Facility in Ionia, Michigan. The parties' summary judgment briefs have clarified the claims at issue.

In moving for summary judgment, Defendants sought dismissal of Plaintiff's Eighth Amendment excessive force claims against Sgt. Breedlove and COs McElfresh, Donahue, and

Hudson; Plaintiff's failure-to-intervene claims against COs McElfresh, Donahue, and Hudson for failing to intervene against Sgt. Breedlove's alleged use of excessive force; and Plaintiff's due process claim against Sgt. Breedlove. Defendants did not address any First Amendment retaliation claim because Plaintiff testified in his deposition that he was not asserting a retaliation claim in this case. (ECF No. 21 at PageID.105 n.3 (citing Plaintiff's deposition transcript, ECF No. 21-2 at PageID.140).) In his response, Plaintiff addressed his excessive force claim only against Sgt. Breedlove, but he addressed his retaliation claims against Sgt. Breedlove and CO Hudson. (ECF No. 24 at PageID.283–91.) Because Plaintiff's testimony was equivocal on whether he was asserting retaliation claims (ECF No. 21-2 at PageID.139), Plaintiff has not voluntarily dismissed his retaliation claims, and Plaintiff alleges retaliatory conduct in his complaint, Plaintiff's retaliation claims are properly before the Court.

In sum, Plaintiff's claims are limited to an excessive force claim against Sgt. Breedlove and First Amendment retaliation claims against Sgt. Breedlove and CO Hudson. To the extent Plaintiff intended to assert excessive force or failure-to-intervene claims against COs McElfresh, Donahue, and Hudson, or a due process claim against Sgt. Breedlove, Plaintiff has waived those claims due to his failure to respond to the arguments in Defendants' brief. *See Alexander v. Carter for Byrd*, 733 F. App'x 256, 261–62 (6th Cir. 2018) ("When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived.") (internal quotation marks and edits omitted) (citing *Haddad v. Sec'y, U.S. Dep't of Homeland Sec.*, 610 F. App'x 567, 568–69 (6th Cir. 2015)).[1]

---

[1] Courts also apply the doctrine of abandonment to claims left unaddressed in response to a motion for summary judgment. *See Brown v. VHS of Mich. Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("This Court's jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.").

**Background**

On July 22, 2017, around 11:30 a.m., CO McElfresh was in the bulkhead area of the I-3 unit placing prisoners from their cells into smaller groups to go to lunch when he saw Plaintiff punch inmate Gardner. He initially thought that Plaintiff and Gardner were engaged in "horseplay," but quickly determined they were fighting when he saw both prisoners exchange closed-fist punches, striking each other in the head and neck areas. (ECF No. 21-3 at PageID.149.) CO McElfresh radioed for assistance and gave loud, verbal commands to stop fighting, but both prisoners continued fighting. CO McElfresh then administered his Personal Chemical Agent (PCA) in a continuous stream toward both prisoners and into their eyes. According to CO McElfresh, Plaintiff and Gardner continued to exchange punches. (*Id.* at PageID.150.) In contrast, Plaintiff states that he complied with a command to get onto the ground and, at that point, inmate Gardner "rushed" Plaintiff. (ECF No. 24-1 at PageID.296.) As Gardner was moving toward Plaintiff, non-defendant CO Darrius Wilson, who had arrived at the scene, deployed his Electronic Control Device (taser) at Gardner, striking him in the back. (ECF No. 21-3 at PageID.150.) According to COs McElfresh and Wilson, Plaintiff and Gardner were both standing when CO Wilson tased Gardner, and both fell to the ground with Gardner on top of Plaintiff. (ECF No. 21-3 at PageID.150; ECF No. 21-4 at PageID.155.) Plaintiff states that he was already on the ground and Gardner fell on Plaintiff when Wilson tased him. (ECF No. 24-1 at PageID.296.) The taser video that Defendants submitted in support of their motion (ECF No. 21-5) appears to support Plaintiff's version that he was already on the ground when CO Wilson tased Gardner.

By this time, Sgt. Breedlove and CO Hudson arrived on the scene. COs Wilson and Hudson handcuffed Gardner and escorted him away from the scene. (ECF No. 21-4 at PageID.155; ECF No. 21-14 at PageID.251.) Sgt. Breedlove dealt with Plaintiff. According to

3

Sgt. Breedlove, he saw both prisoners on the ground and attempted to separate them by grabbing Plaintiff's arm and shirt and moving him away from Gardner. Sgt. Breedlove denies "aggressively yank[ing] and drag[ging] [Plaintiff] from the outside of unit I-3 to the inside of I-3." (ECF No. 21-6 at PageID.150.) Plaintiff tells a different version. Plaintiff states that he complied with an order to separate from Gardner by "crab walking"—walking with his hands and feet while face up with his palms reversed behind him—to move himself. Plaintiff states that as he held his hands up, Sgt. Breedlove grabbed and dragged Plaintiff by his right arm approximately twenty feet. (ECF No. 24-1 at PageID.296.)

CO Donahue approached Plaintiff to place him in handcuffs. When he attempted to handcuff Plaintiff, Plaintiff indicated that he was in pain. CO Donahue and CO Lopez therefore escorted Plaintiff to Health Care by each holding one arm in the bicep area. (ECF No. 21-7 at PageID.168.) Later that day, Plaintiff was taken to the hospital, where he was diagnosed with a dislocated right shoulder. (ECF No. 21-10 at PageID.202.)

On August 1, 2017, Plaintiff filed a grievance against Sgt. Breedlove and COs Hudson, McElfresh, Donahue, and Lopez for excessive use of force during the July 22, 2017 incident. On August 11, 2017, CO Hudson stopped Plaintiff as he was walking to Health Care, apparently under the guise that Plaintiff's shirt was untucked. CO Hudson ordered Plaintiff to submit to a search. CO Hudson then asked Plaintiff how his arm felt and pushed Plaintiff's arm up, causing Plaintiff to scream in pain. CO Hudson then stated, "How's that feel, you son of a bitch?" When Plaintiff asked CO Hudson why he did that to Plaintiff's arm, CO Hudson stated, "Sarg. should have broke both your arms since you want to lie and put me in your grievance!" (ECF No. 24-1 at PageID.296.)

4

On August 14, 2017, Plaintiff filed a second grievance complaining of CO Hudson's "retaliatory shakedown" on August 11, 2017. (ECF No. 21-12 at PageID.245.) Sgt. Breedlove was the respondent on the Step I grievance and denied it. Plaintiff alleges that during the grievance interview, Sgt. Breedlove told Plaintiff, "I should have broke both your arms, you piece of shit! That's why I'm denying your grievance." (ECF No. 24-1 at PageID.296.)

## Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## Discussion

### I. Excessive Force Claim

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words,

the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The Court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

Defendants argue that Sgt. Breedlove is entitled to summary judgment because he used the least amount of force necessary to separate Plaintiff from Gardner and that some force was necessary to quickly restore order, particularly given that other prisoners were still present in the area and presented a risk of more fights in reaction to Plaintiff's altercation with Gardner. However, Defendants must contend with Plaintiff's declaration, which paints a different picture. Plaintiff's version, which the Court must accept as true, creates a genuine issue as to whether Sgt.

Breedlove applied force gratuitously for the purpose of causing pain.  That is, Plaintiff claims that he was away from Gardner with his hands up, and Sgt. Breedlove dragged him approximately 20 feet by the arm, causing Plaintiff's shoulder to dislocate.  A reasonable jury crediting Plaintiff's version could conclude that there was no penological justification for the force that Sgt. Breedlove applied.[2]

Defendants also suggest that Plaintiff's injury was caused by Gardner falling on Plaintiff, as depicted in the taser video.  Defendants' argument provides no basis for summary judgment because the cause of Plaintiff's dislocated shoulder remains a question of fact.  Moreover, the taser video is of limited value and shows nothing that definitively indicates Gardner caused Plaintiff's shoulder injury.

Defendants further argue that Sgt. Breedlove is entitled to qualified immunity on Plaintiff's excessive force claim.  The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999).  An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly

---

[2] Defendants reliance on *Scott v. Harris*, 550 U.S. 372 (2007), to argue that Plaintiff's version is blatantly contradicted by the record is misplaced.  In *Scott*, a police video directly contradicted the plaintiff's version of events, such that no reasonable jury could credit his testimony.  *Id.* at 380–81.  There is no video evidence here that clearly refutes Plaintiff's version.

and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct.  *Id.* at 232.  If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted.  The court may consider either prong of the inquiry without regard to sequence.  *Id.* at 236.  As discussed above, an issue of fact remains as to whether Sgt. Breedlove used excessive force on Plaintiff.  Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's claims.  *See Cameron v. Seitz*, 38 F.3d 264, 273 n.2 (6th Cir. 1994) ("Summary judgment would be inappropriate . . . if there were a factual dispute as to an issue on which the question of immunity turns or if the undisputed facts show that the defendant's conduct violated clearly established rights.") (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

Accordingly, Defendants' motion should be denied with regard to Plaintiff's excessive force claim against Sgt. Breedlove.

**II.     Retaliation**

The requirements for a valid First Amendment retaliation claim are well established.  In order to state a First Amendment retaliation claim, a plaintiff must establish that:  (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In addition, a plaintiff must be able to prove that the protected

8

conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Because Defendants failed to move for summary judgment on Plaintiff's retaliation claim, it cannot be said that they carried their burden on summary judgment under Rule 56(a). Moreover, having reviewed the record, the undersigned concludes that Plaintiff's retaliation claim against CO Hudson could withstand a summary judgment motion.

As for Plaintiff's retaliation claim against Sgt. Breedlove, the undersigned concludes that it fails to state a claim. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." *See Bright v. Thompson*, 467 F. App'x 462, 464 (6th Cir. 2012) (noting that Section 1915(e)(2)(B) authorizes district courts to sua sponte dismiss prisoner complaints that fail to state a claim and that "[s]uch dismissal may occur at any time"). Plaintiff's allegations suffice to meet the first and third elements of a retaliation claim because he engaged in protected conduct and temporal proximity alone could establish the requisite causal connection. The claim fails, however, as to adverse action element. The only action Plaintiff alleges Sgt. Breedlove took is acting as the respondent on and denying his second grievance and insulting Plaintiff.

Many courts, including this one, have held that the denial or refusal to process a grievance is not an adverse action. *See, e.g.*, *Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4 (W.D. Mich. May 29, 2019) (citing cases); *Ross v. Westchester Cty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (the refusal to file a single grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (the failure to process a prison grievance would not

deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (the rejection or denial of prison grievances does constitute an adverse action for purposes of a retaliation claim).  In addition, "verbal insults or harangues are not considered 'adverse actions' for purposes of a retaliation claim."  *Welch v. Chapman*, No. 07-12334, 2008 WL 544618, at *5 (E.D. Mich. Feb. 27, 2008); *see also Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (holding that insulting language or disrespectful comments directed at an inmate are not sufficient to state a claim for retaliation).  Thus, Plaintiff fails to allege a valid claim.

## Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' Motion for Summary Judgment (ECF No. 20) with regard to the excessive force and failure-to-intervene claims against Defendants McElfresh, Donahue, and Hudson and the due process claim against Defendant Breedlove and **deny** the motion with regard to Plaintiff's excessive force claim against Defendant Breedlove and his retaliation claim against Defendant Hudson.  I further recommend that the Court dismiss Plaintiff's retaliation claim against Defendant Breedlove pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

In sum, if the Court adopts this Report and Recommendation, Plaintiff's surviving claims will be his excessive force claim against Defendant Breedlove and his retaliation claim against Defendant Hudson.

I further recommend that an appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Dated: March 2, 2020                            /s/ Sally J. Berens
                                                SALLY J. BERENS
                                                U.S. Magistrate Judge